UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEITH WATTS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09-CV-1753 CAS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court pursuant to the Report and Recommendation of United States Magistrate Judge Terry I. Adelman, filed March 1, 2011. See 28 U.S.C. § 636(b). The Magistrate Judge recommended that the decision of the Commissioner denying plaintiff Keith Watts' ("Claimant") request for waiver of recovery of overpayment of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act be affirmed. The Magistrate Judge found there was substantial evidence to support the Administrative Law Judge's ("ALJ") finding that Claimant and his Representative Payee were not without fault with respect to the overpayment under 42 U.S.C. § 404(b) and applicable regulations and, as a result, the issue of Claimant's ability to repay the overpayment was not relevant.

Claimant has filed objections to the Report and Recommendation, asserting that the ALJ's finding regarding the issue of fault was based on clearly erroneous facts. Specifically, Claimant asserts the ALJ erroneously found that (1) claimant received annual income from a life insurance policy, and (2) claimant's mother, his Representative Payee, knew about the policy and received annual income from the policy. Claimant states that the administrative record shows claimant never

directly received any annual income from the policy, and that this is confirmed by the Report and Recommendation.

Claimant also objects to Section V-A of the Report and Recommendation, which concluded that despite the factual deficiencies in the ALJ's decision, the record showed Claimant's grandfather had purchased the life insurance policy on behalf of Claimant as the insured, the policy itself was valued at over $2000, and Claimant's Representative Payee knew of the existence of the insurance policy and failed to report this information to the SSA. Report and Recommendation at 15. Claimant contends that the Report and Recommendation erroneously purports to justify the ALJ's determination of fault with an analysis not actually used by the ALJ in his decision.

Finally, Claimant objects to any finding by the Magistrate Judge that the Representative Payee knew of the policy, as no evidence in the record proves any awareness of the policy by Claimant or the Representative Payee prior to January 2006.

The Commissioner filed a response to Claimant's objections, addressing each objection and arguing that the ALJ's decision is supported by substantial evidence.

For the following reasons, the Court declines to adopt the recommendation of United States Magistrate Judge, and will remand this matter to the Commission for a new hearing on Claimant's request for waiver of the overpayment recovery.

**Legal Standard of Review**

When reviewing a Social Security decision, the Court does not act as a fact finder or substitute its judgment for that of the ALJ. Bates v. Chater, 54 F.3d 529, 532 (8th Cir. 1995). Rather, a court must affirm the ALJ's decision " so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir.

2005) (quoted case omitted). Reversal is not warranted "merely because substantial evidence would have supported an opposite decision." Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (quoted case omitted).

Overpayments by the SSA are addressed in 42 U.S.C. § 404(a)(1)(A), which provides in pertinent part: "With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person . . . to refund the amount in excess of the correct amount . . . ." An exception to the overpayment reimbursement requirement is created by 42 U.S.C. § 404(b), which states in pertinent part:

> In any case in which more that the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

Under the Commissioner's regulations, "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. A determination of whether an overpaid individual is "without fault" requires consideration of "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." Id. An overpaid individual's fault depends on whether or not the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or

3

(c) [A]cceptance of a payment which he either knew or could have been expected to know was incorrect.

Id.

Recovery or adjustment of an overpayment would defeat the purpose of the Social Security Act if it would deprive the person of income required for ordinary and necessary living expenses. Id., § 404.508. "Adjustment or recovery is considered to be against equity and good conscience if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." Id. at § 416.509.

The overpaid claimant has the burden of proving entitlement to a waiver of overpayment. Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000); Chisenhall v. Astrue, No. 4:07-CV-587 CEJ, 2008 WL 4423906, at * 4 (E.D. Mo. Sept. 25, 2008). Nonetheless, this Court's review of the agency decision is directed towards a determination whether the ALJ's decision on "fault" is supported by substantial evidence, not whether Claimant met his administrative burden to show non-fault. Coulston, 224 F.3d at 901 (J. Bye, concurring). Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (quoted case omitted). The Court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

4

**Procedural Background**

An ALJ awarded Claimant SSI benefits starting on July 1, 2004. Sandra Watts, Claimant's mother, was his Representative Payee. In January 2006, the Internal Revenue Service notified the Social Security Administration ("SSA") that Claimant had interest income in 2003 and 2004 from a life insurance policy/retirement fund.

In a Report of Contact dated January 6, 2006, SSA employee Mr. Brooks reported contacting the Representative Payee regarding an annuity:

> I called payee and asked her about 5B data which shows $214 interest being paid in 2003 and $233 in 2004 from mutual savings life ins co. of Decatur, AL. Payee said she thought DI grandfather took it out for him when he was 8 years old. She claimed not to have more knowledge. She didn't remember getting $233 in 2004.
>
> I called the life ins co (256)552-7011 and spoke with policy verification. The policy was originally with Southern United Life and was bought out by Mutual Savings. It is a life ins policy with an annuity. The policy face value is 14,700 with a CSV of 1,201.58. The annuity value is $6,691.87. The DI is listed as the owner and he has access and he has access. DI has been over the resource limit since he filed in 6/2004.

In a Notice of Planned Action dated January 13, 2006, the SSA notified Claimant his SSI payments would cease beginning February 2006 based on Claimant's resources worth more than $2,000 from a life insurance policy starting in June 2004. On January 15, 2006, Claimant withdrew the balance of the life insurance policy in the amount of $6,691.87.

In a Notice of Overpayment dated February 7, 2006, the SSA notified Claimant of overpayment of his SSI benefits in the amount of $10,935 from July 2004 through January 2006. On March 6, 2006, Claimant filed a Request for Waiver of Overpayment Recovery contending that the overpayment was not his fault and that he could not afford to pay back the money. Claimant indicated that he used the overpaid benefits "[t]o help make mortgage payments, pay for food and

clothing." Claimant alleged that he had no knowledge of the insurance policy. The Request for Waiver of Overpayment was denied on June 20, 2006 and a personal conference was scheduled for July 10, 2006.

The personal conference was conducted on July 11, 2006 by SSA employee A. Bohn, who noted in an Interview Referral Slip and Developmental Notes in pertinent part:

> Payee's father (who is deceased '93) took out policy when bene[ficiary] was a baby, her moth[er] must have continuing (sic) to paid it w/o knowledge of payee & bene[ficiary]. [Payee] alleges she & bene[ficiary] had no knowledge of policy until SSA contacted her. [Payee] told her moth[er] "you knew he wasn't supposed to have any $$$."
> Claimed they cashed in policy 2/06 or 3/06 & he paid medical bill she can't find receipt. Closed out policy - they keep billing but they are not sending payment.

On November 30, 2006, the SSA notified Claimant that his requested waiver of the overpayment had been denied. On December 12, 2006, Claimant filed a request for reconsideration which was denied. Claimant filed a request for hearing before the ALJ. On March 12, 2007, Claimant and Ms. Watts appeared at a hearing before the ALJ.

At the hearing on March 12, 2007, Claimant testified in response to questions posed by the ALJ and counsel. Claimant testified that he did not know there was a life insurance policy in his name or why he had an overpayment. When asked by the ALJ if he ever received any money from the insurance policy, Claimant first answered "no," and then changed his answer to "yes." Claimant testified he did not have to sign any documents, but received a lump sum payment from an insurance policy from his grandmother and spent the money on food and personal items.

Ms. Watts, Claimant's Representative Payee and mother, testified that Claimant lives with her, her husband and daughter. Ms. Watts testified that she was aware of a resource limit of $2,000 for eligibility for SSI. Ms. Watts testified that she did not know about the life insurance policy, and

first learned of it when Social Security called and told her about it. Ms. Watts testified that "in the meantime my mother -- it was something like in the same day or the day after, my mother called and told me that I better tell you about this money." Ms. Watts called the insurance company and "they told me, yes [there was a policy], and told me how much." Ms. Watts testified she had Claimant contact the insurance company in January or February 2006 and request that a check for the policy's cash value be sent to him. Ms. Watts testified that Claimant received the check, had to sign papers from the company, took the check to the bank, and the money was used for living expenses documented by receipts, and was gone by May 2006. Ms. Watts testified that she never has any money left over at the end of the month.

In response to a question concerning a note by a SSA person reporting that Ms. Watts said she "kind of thought there might be a life insurance policy," Ms. Watts testified, "No, I had just found out. Just found out from my mother." Ms. Watts also volunteered, "I asked my mother why she didn't mention [the policy] and she said her husband took that out and it wasn't our business."

In a letter dated March 30, 2007, Claimant's counsel provided an update on the investigation into the annuity associated with the life insurance. Counsel reported that a representative of Mutual Savings Life Insurance Company informed him that "no annuities are paid out on the account, "[t]he insurance policy has a flexible retirement fund (like a savings account) attached to it;" and "[t]he balance with interest, which was about $6,000, was withdrawn on January 9, 2006." Counsel further reported that the premiums had been made by payment from the cash value of the life insurance policy. On April 13, 2007, counsel provided the ALJ with a letter from Mutual Savings Life Insurance Company dated April 4, 2007, and an account statement, to support his assertions.

7

On June 18, 2007, the ALJ issued a decision affirming Claimant's obligation to repay the overpayment. The Appeals Council denied Claimant's request for review on February 16, 2007. Thus, the determination of the ALJ stands as the final decision of the Commissioner.

**The ALJ's Decision**

The Rationale portion of the ALJ's Decision states as follows:

> The claimant was awarded Supplemental Security Income Benefits by an Administrative Law Judge. Subsequently information was provided by the Social Security Administration by the Internal Revenue Service indicating that the claimant had interest income in 2003 and 2004. Investigation revealed that the income was produced by a life insurance/retirement policy with a cash value of $6,691. To be eligible for Supplemental Security Income Benefits an individual cannot have more than $2,000 in countable resources. A life insurance/retirement policy is a countable resource. Due to the life insurance/retirement policy, the claimant was ineligible for all of the Supplemental Security Income Benefits he received. He was overpaid $10,935.
>
> His mother, Sandra Watts, who is his representative payee, filed a request for waiver of the overpayment. That request was denied initially and on reconsideration on the basis that they were not without fault in connection with the overpayment and could afford to make installment payments to refund the overpayment.
>
> The basic assertion by Sandra Watts is that she and the claimant were not aware of the insurance/retirement policy and as such were without fault in connection with the overpayment. The policy was apparently purchased by the claimant's grandfather and after his death was kept in force by his grandmother. In the request for waiver of the overpayment, Mrs. Watts said "We had no knowledge of the insurance policy. Keith's grandmother was the only one aware of its existence." Mrs. Watts stated that they were without fault in connection with the overpayment because "Was [*sic*] completely unaware of the insurance policy." When asked if she told Social Security about the policy she said "Did not know about it." (Exhibit 4).
>
> At the hearing Sandra Watts testified that she had no idea there was an insurance policy. She first learned of it when Social Security told her about it. When she asked her mother about it, her mother told her it was none of her business. Her mother made the payments on the policy. The policy was cashed in January or February 2006. Her son received the proceeds from the policy. She cannot afford to repay the overpayment. She never has money left over at the end of the month.

Sandra Watt's allegations that she did not know about the policy are not convincing. The claimant received income on an annual basis from the policy. She managed his finances. She knew he was getting money from somewhere. Her explanation for this is that she did not remember getting the money. (Exhibit 1). That is not plausible. Initially she also acknowledged that she knew his grandfather purchased an insurance policy for him (Exhibit 1). Her testimony that she did not know about the policy was not convincing. The allegations that she did not know about the policy are not credible.

Sandra Watts knew about the policy and knew that the claimant received income from the policy. She did not disclose this to the Social Security Administration despite being asked about his income and resources. Since she failed to disclose this information, which directly bore on the claimant's eligibility for Supplemental Security Income Benefits, she was not without fault in connection with the overpayment. Since she was not without fault in connection with the overpayment, recovery or adjustment of the overpayment from her cannot be waived. Since she was not without fault in connection with the overpayment recovery or adjustment of the overpayment cannot be waived.

Since she was not without fault in connection with the overpayment her financial circumstances are irrelevant. Furthermore, the record shows that most of the overpayment could have been recovered without causing a financial hardship. In January 2006, the claimant and Sandra Watts were notified that he was not eligible for benefits because of the policy. In February 2006 they were notified of the overpayment. The testimony was that the policy was cashed in January or February 2006. The documentation is that the policy was cashed in January 2006 (Exhibit 22 p 116). That provided them with more than $6,000 in cash. It could have been used to satisfy most of the overpayment. It was not used for that purpose. In addition to documenting that the ability to repay a good portion of the overpayment existed, it also shows a clear intent to maximize benefits while exercising minimal responsibility in the receipt of those benefits.

**Discussion**

As quoted above, the ALJ found that Representative Payee "Sandra Watt's allegations that she did not know about the policy are not convincing. The claimant received income on an annual basis from the policy. She managed his finances. She knew he was getting money from somewhere. Her explanation for this is that she did not remember getting the money. (Exhibit 1). That is not plausible."

9

As the Magistrate Judge pointed out, there is no evidence in the record to support the ALJ's finding that Claimant or his Representative Payee received annual payments from the life insurance policy, and Claimant's evidence consisting of a letter from Mutual Savings Life Insurance Company appears to show otherwise. This erroneous finding formed the heart of the ALJ's decision and was the main basis for his determination of fault. This deficiency cannot properly be characterized as a "arguable deficiency in opinion-writing technique" with "no bearing on the outcome." See Owen v. Astrue, 551 F.3d 792, 801 (8th Cir. 2008) (quoted case omitted).

The ALJ's erroneous finding that Claimant and/or the Representative Payee received interest income payments under the life insurance policy was also the primary basis for his finding that Claimant knew about the policy. The ALJ also relied on the statement in the January 6, 2006 Report of Contact that Ms. Watts thought Claimant's grandfather "took [the policy] out for him when he was 8 years old," but claimed to have no further knowledge about it and didn't remember receiving a $233 interest payment in 2004. The ALJ rejected as not credible and not convincing Ms. Watts' testimony that she did not know about the policy in light of the receiving interest income payments and the statement attributed to her in the Report of Contact.

The ALJ's finding that Ms. Watts' testimony was not credible, specifically that she did not know about the policy until the SSA called and asked her about it, was primarily based on his erroneous finding that Claimant received annual interest income payments under the policy, that Ms. Watts handled Claimant's financial matters, and therefore she had to know Claimant " was getting money from somewhere." However, the April 4, 2007 letter from Mutual Savings Life Insurance Company, which was made a part of the administrative record before the ALJ's decision was issued, appears to shows that Claimant never directly received any annual interest income from the policy.

If this is correct, it provides support for the Representative Payee's testimony and statements that she did not know about the policy and did not remember receiving any interest income payments from it, which the ALJ rejected as not credible.

The ALJ's reliance on Ms. Watt's statement as recorded in the January 6, 2006 Report of Contact, that she "thought [Claimant's] grandfather took out [the policy] for him when he was 8 years old," is not substantial evidence on which to base the finding that Claimant or his Representative Payee were at fault. There is nothing in the Report of Contact to indicate when Ms. Watts learned this information, or that she knew the policy listed Claimant as the owner such that it could be considered his asset. At the hearing, Ms. Watts testified she had no idea the policy existed and learned about it from the SSA calling her. She also testified that she "just learned" of the policy's existence from her mother before she was contacted by the SSA. While this testimony is somewhat confused and potentially contradictory, there is no evidence the ALJ made any attempt to evaluate the credibility of this testimony other than rejecting it based on the erroneous finding that Ms. Watts was aware Claimant had received annual interest income payments from the policy. There is also nothing in the record to indicate that in reaching a determination regarding fault, the ALJ considered Claimant's or Ms. Watts' age, comprehension, memory, or physical and mental condition, as required by the Commissioner's regulations.

The Commissioner argues the ALJ's finding that the Representative Payee knew of the policy is proper and constitutes substantial evidence to support the ALJ's decision, even if the factual finding about Claimant's receipt of interest income from the policy is incorrect. The Commissioner argues that although the Representative Payee claimed she was not aware of the policy's existence until she received the SSA's Notice of Planned Action on January 13, 2006, evidence in the record

11

shows she knew about the policy a week earlier when "she confirmed that she knew Plaintiff's grandfather had purchased a policy," but failed to provide this information to the SSA. Commissioner's Response at 3.

The Commissioner's argument is not factually supported. As set forth above, Ms. Watts testified she found out about the policy when "Social Security called me and told me that it was there." Tr. 147. This testimony is a reference to the January 6, 2006 Report of Contact, not the Notice of Planned Action dated January 13, 2006. Further, the Report of Contact states in pertinent part, "Payee said she thought DI grandfather took it out for him when he was 8 years old. She claimed not to have more knowledge. She didn't remember him getting $233 in 2004. Tr. 13. The Commissioner's argument overstates the level of knowledge reflected by the Report of Contact. More importantly, as stated above, the ALJ did not make any factual findings as to when the Representative Payee learned of the policy's existence or Claimant's ownership of it, nor did he make required findings concerning the credibility factors as set forth in the regulations.

**Conclusion**

After de novo review, the Court concludes that the decision of the ALJ, finding Claimant and/or the Representative Payee at fault and denying Claimant's Request for Waiver of Overpayment Recovery, is not supported by substantial evidence as a matter of law because it is primarily based on an erroneous factual finding. There is no other substantial evidence in the record to support the decision. Therefore the Court will remand the case for further proceedings on the Request for Waiver of Overpayment Recovery, during which the ALJ shall (1) determine whether Claimant or the Representative Payee received any interest or other income from the life insurance policy; (2) determine the credibility of Claimant and the Representative Payee's testimony concerning their

knowledge of the life insurance policy, and when they learned of the policy and its ownership; (3) in making findings on the issue of fault, consider Claimant and Ms. Watts' ages, comprehension, memory, or physical and mental conditions; and (4) determine whether requiring recovery of overpayment would defeat the purpose of providing Social Security to the Claimant or would be against equity and good conscience.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the United States Magistrate Judge is **sustained, adopted** and **incorporated** to the extent of its recitation of the procedural history of this matter as referred to herein. [Doc. 20]

**IT IS FURTHER ORDERED** that the decision of the Commissioner denying Claimant's Request for Waiver of Overpayment Recovery or Change in Repayment Rate for supplemental security income benefits under Title XVI of the Social Security Act is **REVERSED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Commission for further proceedings consistent with this Memorandum and Order pursuant to sentence four of § 405(g).

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this \_\_\_\_\_21st\_\_\_\_\_ day of March, 2011.